# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

DONNA R. SATERLEE, )
)
       Plaintiff, )
)
vs. ) Case No. 09-cv-532-TLW
)
MICHAEL J. ASTRUE, )
Commissioner of the Social Security )
Administration, )
)
       Defendant. )

## OPINION AND ORDER

Plaintiff Donna R. Saterlee, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), requests judicial review of the decision of the Commissioner of the Social Security Administration denying her applications for disability benefits under Titles II and XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. # 8). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

## Review

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security

regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The

evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## Background

Plaintiff was born January 22, 1967 and was 41 years old at the time of the Administrative Law Judge's ("ALJ") final decision on October 1, 2008.[1] (R. 62). Plaintiff has a twelfth grade education. (R. 25, 136). Plaintiff's prior work history consists mainly of work as a fast food worker. (R. 47). She also worked as a laundry worker and dietary aide. Id. Plaintiff alleges a disability onset date of July 1, 2005. (R. 92, 95).

At the May 23, 2008 hearing, plaintiff testified that she is approximately 5'6" tall, weighing 298 pounds. (R. 35). She said she was in special education classes in high school. (R. 27). Plaintiff said she is only able to stand approximately five (5) hours at a time before needing to sit, saying she feels "very tired… [that her] leg is real sore… hurting real bad" by the time she gets home from work. (R. 31). She wears compression hose to help with leg circulation. Id. She also said that her lower back hurts if she sits for more than an hour. (R. 35-36). She stated that her hands go numb "sometimes," whether or not she is working. (R. 33). Plaintiff claimed these problems with her hands make it hard for her to grip and "hold onto" things, although she said that she did not drop things at work. (R. 34). Other than swelling in her ankles, plaintiff has no ulcers or other problems with her feet. (R. 34-35). She testified that prolonged sitting "hurts

---

[1] Plaintiff's application for disability was denied initially and upon reconsideration. (R. 52-55, 58-66, 68-72). A hearing was held before ALJ Lantz McClain May 23, 2008, (R. 20-50), in Tulsa, Oklahoma. By decision dated January 20, 2009, the ALJ found that plaintiff was not disabled at any time through the date of the decision. (R. 5-16). On May 4, 2009, the Appeals Council denied review of the ALJ's findings. (R. 1-3). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

3

[her] lower back," but she admitted she had not mentioned the problem to her doctors. (R. 35-36). She said she is able to bend and touch her knees, but not her toes, and that her knees bother her "sometimes." (R. 36). She sleeps undisturbed for approximately eight (8) hours at night and naps frequently during the day. (R. 37). Plaintiff acknowledged her daily activities include cooking, laundry, washing dishes, caring for her son, caring for pets, driving, shopping, socializing and attending church. (R. 39, 152-157, 202-209).

Plaintiff's medical records range in time from January, 2002 to April, 2008, and include records from plaintiff's treating physician, medical testing, and state consultative examinations. (R. 225-232, 233-235, 236-297, 298-301, 302-309, 310-323, 324-327, 328-330, 331-338, 339-392). The records show diagnoses of a venous ulcer on her right leg, hyperlipidemia, diabetes, hypertension, and obesity. (R. 230, 238, 240, 242, 256, 258, 271).

Plaintiff was examined by two agency consultative examiners, William L. Cooper, Ph.D., on August 28, 2006, and Angelo Dalessandro, D.O, on August 30, 2006. After his examination, Dr. Cooper wrote:

> [Plaintiff] is a 39 year old female who scored in the Borderline range of ability in the present assessment. Relative strength was noted in immediate memory, while relative weakness was noted in verbal abstract thinking. Her language-related skills appear consistently low. She has at least fair ability to read and fair ability to calculate. She was able to understand simple questions and follow simple directions. Her verbal communication skills appear adequate. There were no obvious signs of psychosis, thought she appeared depressed. She is able to relate superficially to others. She may have limited ability to tolerate stress. She is able to avoid obvious hazards in her environment. She could probably manage her own funds.

(R. 300). Dr. Cooper administered the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) to plaintiff to assist with her Social Security application. Plaintiff obtained a full scale IQ

4

score of 74, verbal IQ of 77 and performance IQ of 75. Her highest score was in immediate memory, lowest in verbal abstract thinking. (R. 299-300).

After examination, Dr. Dalessandro gave the following impression and assessment:

1. Morbid obesity.
2. Hypertension.
3. Diabetes mellitus, type II, with peripheral neuropathy.
4. Chronic lumbodorsal and knee strain.
5. Rule out peripheral vascular disease of the right leg.

ASSESSMENT: This is a 39-year-old female with normal gait to speed, stability, and safety. Dexterity of gross and fine manipulation is present. Grip strength is right 21 kg and left 22 kg. Due to her obesity, it is difficult to determine joint deformities or swellings.

(R. 305). Dr. Dalessandro mentioned in his examination notes that "lumbodorsal tenderness was present bilaterally with the left straight leg raising being positive to 75 degrees," and plaintiff was able to heel-and-toe walk. Id.

After a review of the record, Janice B. Smith, Ph.D. completed a Psychiatric Review Technique form regarding plaintiff. (R. 310-322). Dr. Smith considered Listing 12.05, Mental Retardation, determining plaintiff has the disorder of Borderline Intellectual Functioning. (R. 314). Under the paragraph "B" criteria, Dr. Smith noted plaintiff has a moderate limitation on her ability to maintain concentration, persistence or pace, and plaintiff was found to have no episodes of decompensation. (R. 320). Dr. Smith found plaintiff to be markedly limited in her ability to understand, remember, and carry out detailed instructions. (R. 324). In her functional capacity assessment, Dr. Smith noted that plaintiff "can perform simple tasks with routine supervision, . . . can relate to supervisors and peers on a superficial work basis, . . . can adapt to a work situation, . . . [and] can work with the general public on an intermittent and superficial basis." (R. 326).

An agency physical RFC was submitted on October 4, 2006 by Carmen Bird, M.D. (R. 331-338). Plaintiff was diagnosed with diabetes mellitus and hypertension and given the following RFC:

> Occasionally lift and/or carry (including upward pulling) 20 pounds;
> Frequently lift and/or carry (including upward pulling) 10 pounds;
> Stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday;
> Sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and
> Push and/or pull (including operation of hand and/or foot controls) – unlimited, other than as shown for lift and/or carry.

(R. 332). Plaintiff was found to have no postural, manipulative, visual, communicative, or environmental limitations. (R. 333-335).

On March 23, 2004, one of plaintiff's treating physicians, Eric Blackwell, D.O., of Tulsa Regional Medical Center, indicated that plaintiff was able to return to work without restriction. He said she could work "in any job, but [he] feel[s] that standing jobs would be the least desirable … if she could be placed in a [sic] sitting work that may be more beneficial to her to not develop repeat wounds." (R. 235).

**Procedural History**

Plaintiff alleges her disabling impairments are "mental disorder, diabetes, [and] high blood pressure." (R. 131). In assessing plaintiff's qualifications for disability, the ALJ first stated plaintiff met the insured status requirements of the Act through September 30, 2010. Next, he determined at step one of the five step sequential process that plaintiff had not been engaged in substantial gainful activity since July 1, 2005, her alleged onset date. (R. 10). At step two, the ALJ found plaintiff to have the severe impairments of diabetes mellitus, chronic venous stasis of the lower extremity, and borderline intellectual functioning. Id. He mentioned that plaintiff "also alleges numbness in the hands; however, a review of the medical evidence

does not show any documentation of this allegation and is therefore considered medically nondeterminable." (R. 11).

At step three, the ALJ determined plaintiff's impairments did not meet the requirements of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). Id. Before moving to the fourth step, the ALJ found plaintiff had the following residual functional capacity ("RFC"):

> … occasionally lift and/or carry 10 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk at least 2 hours out of an 8-hour workday, sit for at least 6 hours out of an 8-hour workday and perform simple repetitive tasks.

(R. 12). At step four, the ALJ determined that plaintiff was unable to perform any past relevant work, and decided transferability of job skills is not an issue as plaintiff's past relevant work is unskilled. (R. 18). At step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." He listed the occupations offered by the vocational expert of clerical mailer and semi-conductor assembler. Id. The ALJ concluded that plaintiff was not disabled under the Act from July 1, 2005, through the date of the decision. Id.

## Issues Raised

Plaintiff's allegations of error are as follows:

1. The ALJ failed to perform a proper evaluation at step five of the sequential evaluation process;
2. The ALJ failed to perform a proper evaluation at step 3 of the sequential evaluation process; and
3. The ALJ failed to perform a proper credibility determination.

(Dkt. # 18 at 2).

## Review of Issues

Plaintiff first claims the ALJ failed to perform a proper determination at step five (5) of the sequential evaluation process. This allegation of error incorporates three basic sub-arguments. First, plaintiff claims the ALJ erred by finding her complaints of hand symptoms medically nondeterminable, claiming the ALJ miscast the evidence. Next, plaintiff alleges that the ALJ erred by not factoring plaintiff's moderate limitation of concentration, persistence or pace into his RFC, claiming the ALJ did not resolve an inconsistency between non-examining agency reviewers. As the third sub-argument under step five, plaintiff claims the ALJ did not consider plaintiff's depression as a severe or non-severe impairment. The Court disagrees with each argument.

First, as to plaintiff's hand symptoms, plaintiff's treating physician noted positive Phalen's signs and diagnosed her complaints as "likely b/l [bilateral] CTS [carpal tunnel syndrome]" and prescribed bilateral splints on October 11, 2006. (R. 342-343). This date was the last time plaintiff sought or received treatment for her hands. In fact, on November 14, 2006, and January 30, 2007, plaintiff saw her treating physician for prescriptions and reported no complaints at all. (R. 340, 391). In addition, there is no evidence that plaintiff experienced long term problems with her hands prior to the October, 2006 visit. In his August 30, 2006 examination, Dr. Dalessandro did not make any finding of CTS, although he did note of plaintiff: "Dexterity of gross and fine manipulation is present. Grip strength is right 21 kg and left 22 kg." (R. 305). The October 4, 2006 agency physical RFC notes plaintiff having normal gait, speed, stability and safety, with her grip and hand skills intact with no noted limitations. (R. 333-336). In addition, each of plaintiff's cites to the record are to subjective complaints made by plaintiff, not medical evidence. "[A] 'symptom' is not a 'medically determinable physical or mental

impairment' and no symptom by itself can establish the existence of such an impairment." SSR 96-4p. The burden of proof rests with plaintiff during the first four (4) steps of the sequential evaluation process. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). Plaintiff did not meet this burden. Thus, it was not error or miscasting evidence for the ALJ to find plaintiff's complaints of hand symptoms "medically nondeterminable." (R. 11). The ALJ did not find any medically substantiated reason to consider a hand limitation, because there was none.

Plaintiff next argues that "the ALJ found that the moderate limitation of concentration, persistence, or pace did not factor into the RFC." (Dkt. # 18 at 3). This is simply untrue. The ALJ limited plaintiff to "perform[ing] simple repetitive tasks" in his RFC. (R. 12). He also incorporated this limitation in his hypothetical to the vocational expert. (R. 48).

Plaintiff also argues that the ALJ did not resolve an inconsistency between two agency reports regarding her concentration, persistence, and pace. The ALJ adopted the moderate limitation in this area, rather than the "not significantly limited" notation. (R. 320, 324). Therefore, the ALJ decided this issue in plaintiff's favor, and any perceived error was harmless. In addition, "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a [plaintiff]'s RFC, the need for express analysis is weakened." Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004).

Plaintiff's third sub-argument under step five is that the ALJ did not consider plaintiff's depression as a severe or non-severe impairment. Plaintiff claims the ALJ "ignored that her depression played a part in her being terminated from at least one job. (T. 174). He ignored evidence of [plaintiff's] mental breakdown and hospitalization for suicidal ideation." (Dkt. # 18 at 4). The record cite plaintiff uses here is not to a medical record. The cite is to a work activity

9

form completed by plaintiff, where she stated she was "terminated because [she] was unable to follow directions, and [her] attendance, and to get to work on time. [She] ha[d] a hard time getting out of bed, because of depression." (R. 174). There are simply no medical records to corroborate plaintiff's claims. The ALJ noted she is not on medication for depression (R. 14), and the hospitalization she references was for approximately two (2) weeks in early 1990, fifteen years prior to her alleged onset date. There are no medical records to corroborate plaintiff's hospitalization claim. The ALJ discussed plaintiff's depression in his RFC explanation. "We can easily dispose of ... arguments[ ] which relate to the severity of [plaintiff's] impairments. The ALJ ... made an explicit finding that [plaintiff] suffered from severe impairments. That was all the ALJ was required to do in that regard. [Plaintiff's] real complaint is with how the ALJ ruled at step five." Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007). If the ALJ finds the plaintiff has severe impairments, he is not required to list all the impairments he finds non-severe. See also Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir.2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") See also 20 C.F.R. §§ 404.1523, 416.923.

Plaintiff's second allegation of error is that the ALJ failed to perform a proper evaluation at step three by failing to consider how her obesity would apply to any listing. (Dkt. # 18 at 4, 5). The Court disagrees. It is clear the ALJ considered plaintiff's obesity throughout his discussion of his RFC. (R. 15). More importantly, plaintiff did not meet her step three (3) burden of proving she meets a listing. Obesity is not itself a listing and is considered at step three, if it combines with another impairment to meet the requirements of a listing. "[W]e will not make assumptions about the severity or functional effects of obesity combined with other

impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." See SSR 02-1p; 2000 WL 628049. The ALJ found that plaintiff has the following severe impairments: diabetes mellitus, chronic venous stasis of the lower extremity, and borderline intellectual functioning. (R. 10). Plaintiff's obesity has no effect on the issue of whether her intellectual functioning is at a level that meets a listing. As to her other severe impairments, the ALJ considered each in the context of plaintiff's obesity. He limited plaintiff to sedentary work in his RFC, her prior work was classified as light, restricting her to standing two hours of an eight hour workday, instead of the state agency recommended six hours of an eight hour workday. (R. 12).

Plaintiff's final allegation of error is that the ALJ failed to perform a proper credibility determination. The plaintiff cites several factors irrelevant to a credibility determination, such as alleging the ALJ ignored "signs of positive Phalen's signs in relation to the CTS . . . [h]e ignored the demonstration of a positive SLR test," and plaintiff claimed the ALJ miscast evidence. (Dkt. # 18 at 7). The ALJ mentioned plaintiff being treated at OSU College of Medicine Clinic for "follow-up on her diabetes, a ganglion cyst, hyperlipidemia and controlled hypertension." He mentioned "[s]he has also been treated on a regular basis for other conditions or illnesses as they arose." (R. 14). The ALJ made note that plaintiff was seen August 22, 2005 for increased leg swelling and that she reported not wearing her prescribed support hose on a trip to California, but that overall, she had no complaints. This shows a failure on plaintiff's part to follow prescribed treatment. He also noted plaintiff reported "no complaints and doing well" on September 26, 2005. Id. Also, plaintiff reported "no complaints today" during a visit on February 6, 2006. Id.

Plaintiff also claims the ALJ ignored a diagnosis of diabetic neuropathy and that plaintiff "had two Doppler studies of her lower extremities," claiming both showed results of decreased arterial blood supply to her right leg. Id. at 8. These claims are not true. The ALJ discussed a "consultative lower extremity artery procedure" which was performed September 29, 2006 to evaluate her arterial flow. He reported the "ankle brachial index test with bidirectional Doppler revealed normal arterial flow in both legs." (R. 15, 330).

Plaintiff makes a blanket complaint that the ALJ's "credibility determination failed to properly consider the Luna factors," but fails to argue this point further. Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). In addition, this Court's review is limited, and reweighing the evidence is not permissible. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). An ALJ's credibility findings warrant particular deference, because he is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). Thus, the ALJ's judgment regarding credibility will stand if supported by substantial evidence. Gay, 986 F.2d at 1341 (10th Cir. 1993).

The ALJ noted a number of discrepancies and inconsistencies between plaintiff's symptoms and the evidence. By way of example, although plaintiff complained of pain in her hands, she only sought treatment for her hands on one occasion. In addition, as discussed above, plaintiff underwent a Doppler study to determine the arterial flow in her legs, which proved to be normal. He mentioned plaintiff cares for her child, stating that caring for a young child "can be quite demanding both physically and emotionally"; however, he noted plaintiff "is able to care for her child with some assistance from her mother and continue to work on a part-time basis." (R. 16).

The ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence" so long as he identifies which specific evidence he used to analyze plaintiff's credibility. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). See SSR 96-7p (identifying a variety of factors an ALJ should use in analyzing a claimant's credibility including, but not limited to "the individual's daily activities . . . measures other than treatment the claimant uses or has used to relieve pain . . . and . . . other factors concerning the claimant's functional limitations and restrictions due to pain."). Thus, the Court cannot find that the ALJ's credibility assessment was in error.

## Conclusion

The decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 11th day of March, 2011.

_____
T. Lane Wilson
United States Magistrate Judge